## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CROWN VILLAGE FARM, LLC, | ) | Case No. 09-11522(KG) |
| | ) | |
| Debtor. | ) | **Re Dkt Nos. 52 & 106** |
| | ) | |
| CROWN VILLAGE FARM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Proc. No. 09-50947(KG) |
| | ) | |
| ARL, L.L.C., | ) | |
| JERUNAZARGABR, LLC, and | ) | |
| CROWN FARM RETAIL, LLC, | ) | |
| | ) | |
| Defendants. | ) | **Re Dkt Nos. 25, 27 & 45** |

## MEMORANDUM OPINION

### INTRODUCTION

The Court conducted an evidentiary hearing on June 2, 2009, on a motion to dismiss the Chapter 11 case, followed by oral argument on both the motion to dismiss and motions for abstention. The Court has the benefit of an extensive record and the assistance of briefing and arguments of able counsel in reaching a decision. The issues before the Court involve whether (a) Debtor filed its bankruptcy case in good faith and (b) the Court must or should abstain in favor of state court litigation.

The two motions which the Court is deciding in this opinion are:

(1) the motion of the <u>Aris Entities</u>[1] to dismiss the chapter 11 bankruptcy case or, in the alternative, to abstain from hearing the <u>Adversary Proceeding</u>, and (2) the motion of <u>Crown Farm Retail</u> to abstain from hearing the <u>Adversary Proceeding</u>.

The <u>Debtor</u> owns the <u>Crown Property</u> in which other parties claim an interest and rights. If <u>Debtor</u> succeeds in the <u>Adversary Proceeding</u> and confirms the Plan, Defendants will not have any rights or interest in the <u>Crown Property</u>. The specific facts involving numerous transactions and parties would require a detailed analysis which is largely unnecessary to resolve the present issues. The Court will therefore make reference only to those facts which are either undisputed or relevant to the pending motions. Fortunately, the facts relevant to the pending motions are largely undisputed. The hearing exhibits the parties introduced are nearly identical and the depositions, which the Court read in their entirety, reveal little dispute concerning the facts. The conclusions to be drawn from the facts are, however, fiercely contested.

---

[1] The Court has prepared a glossary of abbreviated terms which are underlined in the body of the opinion and a chart which depicts the transactions and the relationships involving the parties. The glossary and chart are contained in an appendix to this opinion.

## FACTS[2]

### 1. Debtor

Debtor is a limited liability company formed under Delaware law. It has no employees or operations. On July 13, 2005, KB Maryland and Centex Crown entered into the Operating Agreement of Debtor. They formed Debtor as a joint venture to acquire and prepare the Crown Property for development. KB Maryland and Centex Crown each own 50% of the membership interests in Debtor. (Janzik Dec., Dx 12 at ¶ 7).

### 2. The Property

In this single asset real estate case, the background facts relate to valuable real estate consisting of approximately 180 undeveloped acres near Gaithersburg, Maryland. Debtor purchased the Crown Property in September 2005 after purchasing (through a predecessor in interest) a right of first refusal to purchase the Crown Property which the Aris Entities owned through an affiliate. The Aris Entities received cash, a promissory note (later paid in full), rights to approximately 18.5 to 20 acres of the Crown Property to be devoted to commercial use (i.e., the Commercial Parcel) and the right to future payments per lot of residential property. The Aris Entities later sold their retained rights to Crown Farm Retail, keeping a right to a pad site on the Commercial Parcel.

---

[2] Except for general background purposes, the Court's discussion of the facts will not extend to the disputed facts pertaining to the issues raised in the Adversary Proceeding and the State Court Actions. The Court is not making any findings of fact in the Adversary Proceeding which could be deemed to have any preclusive effect.

### 3.  **Debtor's Borrowings**

Debtor financed the purchase of the Crown Property in September 2005 through a

$200 million secured Credit Facility.  Dx 5.  Bank of America[3] served as agent, arranger and

as one of eight lenders.  Debtor received a $100 million term loan which partially funded the

$137 million purchase price and a $100 million revolving line of credit to fund development

of the Crown Property.  Dx 5.

The Credit Facility became due on September 2008, at which time there was

outstanding: on the term loan, a principal balance of $100 million, accrued and unpaid

interest of $176,000 and late fees of $1.5 million; and on the revolver, a principal balance of

$30.2 million, accrued and unpaid interest of $2,116,000 and late fees of approximately $1.5

million.  Dx 12.

The Credit Facility availability was capped at 67.5% of the lesser of net book value

or current market value of the Crown Property.  A June 2008 reappraisal indicated that the

market value of $104.9 million was less than  Debtor's outstanding borrowings, thus

requiring a remargining payment of $59.4 million.  Dx 10.  The Debtor was unable to satisfy

Bank of America's demand for a remargin payment, and on August 12, August 20 and

September 17, 2008, Bank of America notified Debtor that Debtor was in default of the

---

[3]  References to "Bank of America," unless otherwise noted, include the entire syndicate of
lenders, who are: Bank of America (successor by merger to LaSalle Bank National Association), as
administrative agent, arranger and a lender, Bank of Scotland PLC, Compass Bank, Franklin Bank,
SSB (which is in receivership and under the control of the Federal Deposit Insurance Corporation),
National City Bank, PNC Bank, N.A., Raymond James Bank, FSB, and Summitomo Mitsui
Banking.

Credit Agreement.    Dx 11.  In October 2008, the Debtor entered into a forbearance agreement with Bank of America, which agreed not to enforce its rights through November 14, 2008.  Dx 12.

### 4.  Parents / Guarantors

When Debtor purchased the Crown Property, Parents / Guarantors entered into a Limited Guaranty and Completion Agreement whereby they were each liable in certain events for 50% of the obligations under the Credit Agreement (Dx 7) and for certain completion obligations, i.e., costs and expenses to complete the development of the Crown Property.

### 5.  Bankruptcy Preparation

Debtor and Bank of America engaged in discussions during the forbearance period. On December 1, 2008, Debtor and Bank of America entered into a fee letter with a term sheet for a preagreed chapter 11 filing which required Debtor to sell the Crown Property through the bankruptcy.  Dx 14. The term sheet provided for Debtor to file its bankruptcy case in Delaware, with Parents/Guarantors agreeing to serve as a stalking horse bidder with a purchase price of $70 million, subject to an auction.  The parties thereafter memorialized the term sheet in the PSA.  Dx 13.

The PSA provides, *inter alia*, that: concurrently with the sale of the Crown Property pursuant to the Plan, the PSA Parties would deliver to Debtor a complete and unconditional release of liens and deed of trust; termination events include failure to meet an expedited

schedule (discussed below); the <u>Parents/Guarantors</u> will pay to <u>Bank of America</u> the difference between the final purchase price and the balance owed to <u>Bank of America;</u> and <u>Bank of America</u> will release the <u>Parents/Guarantors</u>.

A few examples from the deposition testimony will illustrate the bona fides of <u>Debtor</u>'s bankruptcy and that the facts relative to the motion to dismiss are largely disputed.

David Barclay, <u>Centex</u>'s Rule 30(b)(6) representative, testified that:

1.      Development of the <u>Crown Property</u> did not make economic sense because of the loss of land value.  (Pages 27-29).

2.      The <u>Debtor</u> was in financial distress in the Summer 2008. (Page 29).

3.      The <u>Crown Property</u> is worth $50 million to $70 million, but much less if the <u>Plan</u> is not confirmed.  (Page 30)

4.      The <u>PSA</u> requires <u>Centex</u> to pay $22.5 million to <u>Bank of America</u> if the <u>Plan</u> is not confirmed (Page 38).

Wayne Janzik, testified on behalf of <u>KB</u> and <u>Debtor</u> that:

1.      <u>KB</u> had financial exposure to <u>Bank of America</u>.  (Page 30)

2.      <u>Parents/Guarantors</u> will hold the <u>Crown Property</u> until market conditions change if they are the successful bidder.

3.      The <u>Commercial Parcel</u> is valued at approximately $6 million.  (Page 64).

4.      The <u>Debtor</u> decided to file for bankruptcy in early November 2008. (Page 91).

6

Eyal Namordi testified for <u>Bank of America</u> that:

1.      <u>Debtor</u> failed to make a demanded remargin payment and were in default on the <u>Bank of America</u> loan by July 2008.  (Pages 21-22).

2.      <u>Bank of America</u> gave notice of default in August 2008 to <u>Debtor</u> but not to <u>Parents/Guarantors</u>.  (Pages 24, 29).

3.      <u>Bank of America</u> told <u>KB</u> and perhaps <u>Centex</u> that it or they owed $130 million. (Page 54).

4.      The <u>Parents/Guarantors</u> have agreed to make <u>Bank of America</u> whole.  (Page 73).

## 6.  The State Court Actions

The <u>Aris Entities</u> commenced an action in December 2008 in the Circuit Court for Montgomery County, Maryland, against <u>KB Maryland</u>, <u>Debtor</u>, <u>KB Home</u>, <u>Bank of America</u>, <u>Crown Farm Retail</u> and <u>Wells Fargo</u>.  Sx 9.  The <u>Aris Entities</u> seek a declaration that they hold equitable title to one acre of the <u>Commercial Parcel</u> and are entitled to have <u>Debtor</u> convey legal title to them.  The <u>Aris Entities</u> also seek more than $30 million in damages.

<u>Crown Farm Retail</u> brought a separate suit in Montgomery County, Maryland in January 2009 against <u>Debtor</u> and the <u>Aris Entities</u> seeking a declaration that it holds equitable title to the <u>Commercial Parcel</u> and that <u>Debtor</u> is required to convey legal title on Debtor's completion of conditions precedent of a ministerial nature.

The two actions have been consolidated and are presently scheduled for trial in March, 2010. However, <u>Defendants</u>, at the hearing, presented credible testimony that the <u>State Court Actions</u> are specially assigned and that the trial is likely to take place sooner.

<u>Debtor</u> filed a Notice of Removal to the bankruptcy court in Maryland of a portion of the <u>State Court Actions</u> - - claims which coincide with the claims in the <u>Adversary Proceeding</u>. <u>Debtor</u> did not remove the breach of contract, money damage claims. In turn, the Defendants have asked the Maryland Bankruptcy Court to remand the case.

### 7. <u>The Adversary Proceeding</u>

At the outset of the chapter 11 case, <u>Debtor</u> also filed the <u>Adversary Proceeding</u> to facilitate the sale of the <u>Crown Property</u> by seeking a declaratory judgment establishing that the claims of the <u>Aris Entities</u> and <u>Crown Farm Retail</u> are general unsecured claims and are barred by the rule against perpetuities. If successful in the <u>Adversary Proceeding</u> in establishing that the <u>Aris Entities</u> and <u>Crown Farm Retail</u> are general unsecured creditors, the likely result will be that they will receive nothing - - unless the sale of the <u>Crown Property</u> generates far more than anyone expects. The issues are similar to those in the <u>State Court Actions</u> with the exception of the claims for damages. The resolution of the <u>Adversary Proceeding</u> would determine the rights and interests of the parties in the <u>Crown Property</u> and, in particular, those of the <u>Aris Entities</u> and <u>Crown Farm Retail</u>. Trial is scheduled for September 21-25, 2009 before this Court.

8

## DECISION

### 1. Standard for Dismissal

"Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. §1112(b) unless filed in good faith. . . ." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004). The debtor bears the burden of establishing good faith. *In re SGL Carbon Corp.*, 200 F.3d 154, 162 n.10 (3d Cir. 1999).

"Whether the good faith requirement has been satisfied is a fact intensive inquiry in which the court must examine the totality of the circumstances and determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *In re 15375 Memorial Corp.*, 400 B.R. 420, 427 (D. Del. 2009)(quoting *Integrated Telecom*, 384 F.3d at 118; *SGL Carbon*, 200 F.3d at 162)(internal quotation marks omitted). One court in this jurisdiction set out the relevant evidentiary factors that courts should review prior to determining whether a case should be dismissed:

> (a) Single asset case; (b) Few unsecured creditors; (c) No ongoing business or employees; (d) Petition filed on eve of foreclosure; (e) Two party dispute which can be resolved in pending state court action; (f) No cash or income; (g) No pressure form non-moving creditors; (h) Previous bankruptcy petition; (i) Prepetition conduct was improper; (j) No possibility of reorganization; (k) Debtor formed immediately prepetition; (l) Debtor filed solely to create automatic stay; (m) Subjective intent of the debtor.

*In re Primestone Inv. Partners*, 272 B.R. 554, 557 (D. Del. 2002)(citing *SLG Carbon,* 200 F.3d at 165; *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988); *In re SB Properties*, 185 B.R. 198, 205 (E.D. Pa. 1995)). This list is not exhaustive, and no one

9

factor should be controlling. *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 211 (3d Cir. 2003); *In re Shar*, 252 B.R. 621, 630 (D.N.J. 1999).

Once these pieces of factual information are ascertained, courts must next apply them when considering: "(1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving the going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *15375 Memorial*, 400 B.R. at 427 (quoting *Integrated Telecom*, 200 F.3d at 119-20).

Under the first of these considerations, the courts in this Circuit have made clear that even where the debtors are not attempting to preserve going concern, for example when a liquidation plan will be filed, they can still satisfy the good faith requirement, provided that the filing preserves "some value that otherwise would be lost outside of bankruptcy." *15375 Memorial*, 400 B.R. at 427 (quoting *Integrated Telecom*, 200 F.3d at 120). "Reorganization. . . is not the only appropriate use of Chapter 11 since the Code clearly contemplates liquidating plans under 11 U.S.C. §1123(b)(4)." *Integrated Telecom*, 200 F.3d at 120 n.4. Therefore, so long as the liquidation plan is maximizing the value of the debtor's estate, it serves a valid bankruptcy purpose and meets the good faith requirement. *See id.*

As for the second question, timing is a key element. Generally, a judge will evaluate whether the timing of the filing of a Chapter 11 petition indicates that the "*primary,* if not *sole*, purpose of the filing was a litigation tactic." *15375 Memorial*, 400 B.R. at 427 (quoting *SGL Carbon*, 200 F.3d at 165)(emphasis added).

The Court is fully satisfied that the <u>Debtors</u> filed this case in good faith. The facts are clear that the bankruptcy case was being planned and was ready for filing well before the <u>State Court Actions</u> were filed. Importantly, <u>Debtor</u> filed after the <u>State Court Actions</u> but only because it ran into delays because eight banks were involved in approving and executing documents. One bank was in receivership, further slowing the process.

In November 2008, <u>Debtor</u> was in serious trouble. Its effort to sell the <u>Crown Property</u> was unsuccessful, it was unable to meet its debt obligations under the <u>Credit Agreement</u>, the real estate market was in crisis and <u>Debtor</u> was unable to generate any income because its sole asset was undeveloped real estate which it could not develop. The circumstances demanded that <u>Debtor</u> work with <u>Bank of America</u>, and the result was the <u>PSA</u> which required <u>Debtor</u> to file a bankruptcy petition in this Court. It deserves repeating that the evidence shows that the delay in filing for bankruptcy - - during which the <u>Aris Entities</u> and <u>Crown Farm Retail</u> filed the <u>State Court Actions</u> - - resulted from the time required to obtain the agreement of all of the Lenders, particularly one lender which was in receivership. The Court therefore must conclude that the bankruptcy filing was independent of and not in response to the <u>State Court Actions</u>. The bankruptcy filing clearly was not a litigation tactic.

The Court's inquiry turns to whether the petition serves a valid bankruptcy purpose. The answer is a resounding "yes." It is clear to the Court that the bankruptcy strategy is designed to maximize the value of the estate and to preserve value that otherwise would be

lost. *In re 15375 Memorial Corp.*, 400 B.R. 420, 427 (D.Del. 2009). A proper purpose includes maximizing the value of a debtor's sole asset as is the case here where the Debtor will market the Crown Property and subject it to an auction process for sale to the highest and best bid. The sale process will be under the close scrutiny of the Court as required where the stalking horse is an insider. Moreover, this is not an "insider fire sale" as the Aris Entities argue, because with trial in the Adversary Proceeding scheduled for September and allowing time for post-trial briefing and decision by the Court, the earliest a sale can occur is November 2009.[4] During the intervening months, Debtor will have to market the Crown Property actively, and the Court will expect Debtor to consider alternatives for maximizing value such as the possibility of subdivision if it can be shown that a sale of a single large tract depresses the value. Given the current economic atmosphere and the sad state of the real estate market, speed is not necessary or warranted. If necessary, the Court will serve as a fireman.

The factors which courts employ to determine whether to dismiss a case are also helpful. Looking at the thirteen factors identified above, it is clear that Debtor satisfies at least eight of them: the petition was not filed on the eve of foreclosure, this is not a two party dispute, Debtor faces pressure from non-moving creditors, there were no prior bankruptcy

---

[4] The Court will not allow anything to chill an active marketing and auction process. As an example, the present proposed bidding procedures which provide a break up fee to the Parents/ Guarantors is unacceptable.

petitions, <u>Debtor</u>'s prepetition conduct was not improper given its financial distress,[5] <u>Debtor</u> was not formed immediately prepetition, <u>Debtor</u> did not file solely to create the automatic stay and <u>Debtor</u>'s subjective intent - - to maximize value - - is proper.

The overarching reality is that <u>Debtor</u> had two choices, either abandon its sole asset or seek to maximize the value of its asset through the bankruptcy process. In choosing the latter, <u>Debtor</u> acted in good faith. Thus, the lead cases in this Circuit which the moving parties cite are readily distinguishable.

In *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004), a solvent debtor filed for bankruptcy protection after threatening its landlord that if it did not accept a settlement of a lease dispute, the lessee would use bankruptcy to cap the landlord's damages. The Third Circuit held that the lessee had abused the bankruptcy process because the lessee/debtor was not in financial distress and was using the bankruptcy as extortion.

In *In re SGL Carbon*, 200 F.3d 154 (3d Cir. 1999), once again the Third Circuit ruled that a financially healthy debtor filed its bankruptcy petition in bad faith. The debtor faced a major antitrust litigation and conceded that it was financially healthy and would not have sought bankruptcy protection but for the antitrust claims. The Third Circuit concluded that

---

[5] <u>Defendants</u> have expressed outrage that <u>Debtor</u> obtained numerous extensions to respond to their complaints without disclosing (and denying when asked) their plans to file for bankruptcy protection. <u>Debtor</u>'s lawyer in the <u>State Court Actions</u> was not involved in the bankruptcy planning and it is unclear if he knew or didn't know of the imminent filing. The Court understands <u>Defendant</u>'s enmity toward what they believe was an abuse of their professional courtesy. The situation adds flavor to the dispute but does not bear upon the substance and does not rise to the level of improper conduct.

the debtor filed the bankruptcy petition without a valid reorganizational purpose and accordingly the filing lacked the requisite good faith.

Finally, in *In re 15375 Memorial Corp.*, 400 B.R. 420 (D.Del. 2009), the district court, reversing the bankruptcy court, ruled that debtors filed their bankruptcy petitions as a litigation tactic and that the cases should therefore be dismissed. The district court found that because debtors did not have any meaningful assets - - the debtors did not file the bankruptcy case to maximize value - - and given the litigation facing debtors (and their parent company), the case should be dismissed.

The foregoing cases are leading cases in this district and circuit and the comparisons illustrate why the Court should not dismiss this case. Here, Debtor is in real financial distress and would be directly and imminently harmed because of its insolvency. Debtor owns a valuable asset and is trying to protect that asset, the Crown Property, in bankruptcy and to maximize the asset's value. Moreover, by seeking relief from this Court where it must "empty its pockets," Debtor's actions are in the open and subject to scrutiny.

The factors which weigh heavily in Debtor's favor on the dismissal motion include Debtor's serious financial woes, the sorry state of the financial markets in the worst real estate market in decades, the quality of Debtor's real estate holdings, Debtor's effort to maximize that value, the risk of imminent harm, the pre-filing work with Debtor's lenders to provide the necessary breathing spell and the preparations made before Defendants brought suits against Debtor. Accordingly, the Court will deny the motion to dismiss.

14

## 2. **Abstention**

In this case, the Defendants assert three bases for this Court to abstain from proceeding with the Adversary Proceeding, allowing the State Court Actions to proceed in normal course.  First, they assert that the facts and circumstances of this case require this Court to abstain under 28 U.S.C. § 1334(c)(2) which governs mandatory abstention.  In the alternative, they contend that even if this Court is not required under mandatory abstention to allow the State Court Actions to proceed, the Court, in its discretion, should do so through the doctrine of permissive abstention.  Finally, Defendants have requested that the Court abstain under 11 U.S.C. § 305(a) which allows a court to dismiss a case under title 11 or suspend all proceedings in such a case.

Defendants' first argue the applicability of 28 U.S.C. § 1334(c)(2), mandatory abstention.  Under mandatory abstention, a court must abstain from the action "if the movant establishes (1) that it filed a timely motion; (2) the proceeding is based solely on state law issues; (3) the proceeding is related to a case under the Bankruptcy Code, but does not arise under the Bankruptcy Code or in a case under the Bankruptcy Code; (4) there is no independent basis for federal jurisdiction other than the bankruptcy proceeding; (5) an action has been commenced in a state forum; and (6) that case can be timely adjudicated in state court." *In re Holiday RC Superstores, Inc.*, 362 B.R. 126, 130 (citing 28 U.S.C. § 1334(c)(2)).  Mandatory abstention does not apply, however, where the proceeding is "core." *In re Midstate Mortgage Investors, Inc.*, 105 Fed.Appx. 420, 422 (3d Cir. 2004)(citing *In re*

15

*Donington*, 194 B.R. 750, 757 (D.N.J.1996)).

An alternative ground on which <u>Defendants</u> assert that this Court should abstain from hearing the <u>Adversary Proceding</u> is permissive abstention. Permissive abstention arises under 28 U.S.C. § 1334(c)(1) which provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." This form of abstention occurs, therefore, when a court determines that although mandatory abstention is not applicable and that jurisdiction in the federal court was properly conferred, abstention is, in its discretion, appropriate. However, "abstention is [only] appropriate in a few carefully defined situations. . . . [It] remains 'the exception, not the rule. . .'. [It] is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. . . . Therefore, 'abstention rarely should be invoked.'" *Gwynedd Properties, Inc. v. Lower Gwynedd Tp.*, 970 F.2d 1195, 1199 (3d Cir. 1992)(quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976); *Ankenbrandt v. Richards*, 504 U.S. 689 (1992))(internal quotation marks omitted).

Matters for which permissive abstention is reserved include: (1) matters in which difficult, uncertain issues of state law or those in which the state has a unique interest are presented, *In re Stephen Smith Home for the Aged, Inc.*, 80 B.R. 678, 682-87 (E.D. Pa. 1987); (2) matters in which the proceeding has been removed from state court and/or there is a

16

parallel state court action pending, *In re Tidwell Industries, Inc.*, 87 B.R. 345, 348-50 (Bankr. E.D. Pa. 1988); (3) the proceedings principally involve claims asserted by or against non-debtors, *In re Futura Industries, Inc.*, 69 B.R. 831, 835-36 (Bankr.E.D.Pa.1987); and (4) matters in which some other truly extraordinary aspect is present.

Because there is such "a 'narrow sphere' of cases in which discretionary abstention should be granted under § 1334(c)(1)," this jurisdiction has set out a multi-factor test for determining which cases are appropriate for the doctrine. *In re West Coast Video Enterprises, Inc.*, 145 B.R. 484, 488 (Bankr. E.D. Pa. 1992).  Courts must consider: (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties." *In re LaRoche Industries, Inc.*, 312 B.R. 249 (Bankr. D. Del. 2004)(citing *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987);

17

*see also Integrated Health*, 291 B.R. at 619; *Valley Media, Inc. v. Toys R Us, Inc.* (*In re*

*Valley Media, Inc.*), 289 B.R. 27, 29 (Bankr.D.Del.2003); *In re Continental Airlines, Inc.*,

156 B.R. 441, 443 (Bankr.D.Del.1993); *TTS, Inc. v. Stackfleth* (*In re Total Technical*

*Services, Inc.*), 142 B.R. 96, 100-01 (Bankr.D.Del.1992)).

Finally, the movants invoke the Bankruptcy Code itself in order to persuade this Court

to abstain from hearing this proceeding.  Section 305(a) statutorily requires the court to

abstain when certain conditions are met:

> (a) The court. . . may abstain or may suspend all proceedings in a case under
> this title, at any time if
>
> > (1) the interests of creditors, and the debtor would be better served by such
> > dismissal or suspension; or
> >
> > (2)(A) a petition under section 1515 for recognition of a foreign proceeding
> > has been granted; and
> >
> > (B) the purposes of chapter 15 of this title would be best served by such
> > dismissal or suspension under subsection (a)(2) of this section.

Like mandatory and permissive abstention under 28 U.S.C. § 1334(c)(1)-(2), however,

a "motion under section 305(a) to dismiss a petition or suspend the bankruptcy case is a form

of extraordinary relief, and abstention under section 305(a) is a power that should only be

utilized under extraordinary circumstances." *In re Century/ML Cable Venture*, 249 B.R. 9,

37 (S.D.N.Y. 2003).

Factors to consider when determining whether 305(a) abstention is appropriate include:

> "(1) economy and efficiency of administration;(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought." *In re Century/ML Cable Venture*, 249 B.R. 9, 38 (S.D.N.Y. 2003)(citing *801 South Wells Street, L.P.*, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996)).

### a.  **Mandatory Abstention**

The short answer to the Defendants' abstention motions is this: the Adversary Proceeding presents core bankruptcy issues.  Although Defendants are correct that the Adversary Proceeding involves questions of Maryland law, 28 U.S.C. § 157(b)(3) establishes that the presence of issues affected by state law does not alter the core nature of a proceeding. The Adversary Proceeding is nothing if not a proceeding to determine the validity of the Debtor's interest in the Crown Property and is therefore a core proceeding. *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1980).  Also, as Debtor explains and the Court agrees, the Adversary Proceeding concerns matters which directly and overwhelmingly impact the administration of Debtor's estate and the liquidation of the

19

estate's assets - - the <u>Crown Property</u> - - thereby involving the Court's core jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).  Accordingly, mandatory abstention does not apply.  *In re Midstate Mortgage, Inc., supra.*

     <u>Defendants</u> also do not establish, as required, that each and every one of the prerequisites for mandatory abstention is present.  As discussed above, the courts base their decisions on whether abstention is mandatory on six elements, and all six must be present.  In this case, at least three are not.  *Lead I JV, LP v. North Fork Bank.*, 401 B. 571, 579 (E.D.N.Y. 2009).

First, the issues are not based solely on state law.  A pivotal issue is a bankruptcy issue, namely, whether <u>Defendants</u> can be treated as unsecured creditors under the Bankruptcy Code.

Second, the <u>Debtor</u> could have brought the <u>Adversary Proceeding</u> in federal court without the bankruptcy filing because there is diversity of citizenship.  <u>Debtor</u> is a Delaware limited liability company because its members are Delaware corporations.  <u>Defendants</u> are also considered Maryland limited liability companies because their members are Maryland citizens.[6]

Third, although <u>Defendants</u> presented unrefuted testimony that the <u>State Court Actions</u> have been specially assigned and will be on a fast track, once the Court would abstain and

---

[6]  In determining diversity of citizenship, limited liability companies qualify as citizens of the state in which their members are citizens.  Ketterson v. Wolf, No. Civ. A. 99-689-JJF, 2001 WL 9409009 (D.Del Aug. 14, 2001).

defer to the State Court Actions, Debtor would be at risk of normal litigation delays - - discovery disputes, motion practice, necessary and understandable calendar changes caused by a judge having to prioritize a busy trial practice. Here the Court can and will hold the parties to the schedule which the Debtor's financial needs command.

The Court therefore finds that mandatory abstention is not applicable.

### b. **Permissive Abstention**

The Court may, in its discretion, abstain from adjudicating the Adversary Proceeding on the basis of 28 U.S.C. § 1334(c)(1). This Court has delineated the factors it will consider in deciding if it will exercise its discretion in favor of abstaining. *See, e.g., Valley Media, Inc. v. Toys R Us, Inc.* (*In re Valley Media, Inc*., 289 B.R. 27, 29-30 (Bankr.D.Del. 2003).

The Court is satisfied that applying the factors to this case compels the Court to find that abstention would constitute an improper exercise of discretion. Most importantly, abstaining would have a deleterious effect on the administration of the Debtor's chapter 11 case which would languish while core issues were tried elsewhere. Under such circumstances, abstaining would represent an abuse of discretion.

### c. **Section 305(a)**

The Court discussed above the premise of § 305(a) which Defendants urge as an alternative basis for abstention. The Court has already discussed its conclusion that abstention would harm the administration and preservation of Debtor's estate. § 305(a) supports the Court's conclusion that abstention is not appropriate in this case.

## **CONCLUSION**

The Court can not and will not try to determine all of the permutations which multiple litigations present or whether learned judges in other courts will defer to this Court to avoid the risk of inconsistent verdicts.  What the Court can and has done is address the situation at hand.   Debtor, in extreme financial distress and owning a valuable asset has sought bankruptcy relief.  Debtor has developed a plan to maximize the value of that asset.  Before it can do so, however, a court must determine competing interests in the property.  On these facts, Debtor has established that it filed in good faith and that this Court is the appropriate tribunal to determine the disputed claims.

Accordingly, the Court will issue an Order denying the pending motions.

Dated: June 12, 2009

KEVIN GROSS, U.S.B.J.

22